# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHONY E. FELDER,<br><br>              Plaintiff,<br><br>   v.<br><br>HENSON, et al<br><br>              Defendants. | Case No.  1:13-cv-01622-AWI-JLT (PC)<br><br>**FINDINGS AND RECOMMENDATION FOR PLAINTIFF TO PROCEED ON COGNIZABLE CLAIMS IN THE SECOND AMENDED COMPLAINT AND THAT DEFENDANTS STARR, HENSON, DR. STOCKWELL, AND DR. LAKSHIMI AND ALL CLAIMS AGAINST THEM BE DISMISSED**<br><br>**(Doc. 41)**<br><br>**30-DAY DEADLINE** |

      Plaintiff claims he was subjected to a body cavity search when he arrived at Avenal State Prison ("ASP").[1]  As discussed in greater detail below, Plaintiff states some cognizable claims under the Fourth, Eighth, and Fourteenth Amendments against some of the named Defendants in the second amended complaint ("SAC").  However, he fails to state any cognizable claims against Defendant Starr and fails to link Defendants Henson, Dr. Stockwell, and Dr. Lakshimi to any of his allegations.  Thus, the Court recommends these defendants be **DISMISSED**.

**I.     Screening Requirement**

      The Court is required to screen complaints brought by prisoners seeking relief against a

---

[1] Plaintiff was granted leave to file the second amended complaint after the Court granted Defendants' motion to dismiss.  (*See* Docs. 38, 39.)

1

1  governmental entity or employee. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or
2  portion thereof if the prisoner has raised claims that are frivolous or malicious, that fail to state a
3  claim upon which relief may be granted, or that seek monetary relief from a defendant who is
4  immune from such relief. 28 U.S.C. § 1915A(b)(1),(2).

5  **II.      The Second Amended Complaint**

6        Plaintiff complains of acts that occurred when he arrived at ASP and names the following
7  as defendants in this action: ISU IGI Sergeant Henson, ISU Officers Gibson, Kruse,
8  Kuckenbaker, Morgan, Villalba, and Sergeant Hill; Watch Commander Amaro; MTTA RN Starr;
9  Dr. McLoughlin; Dr. P. Narayan; Dr. Lakshimi; and Dr. Stockwell. Plaintiff seeks declaratory
10 and monetary relief.

11       Plaintiff alleges that, on May 16, 2013, during his transport to ASP from Chuckwalla
12 Valley State Prison ("CVSP"), Amaro received a call from CVSP Investigative Services Unit
13 ("ISU"). The ISU officer reported "they had received confidential information from a proven
14 reliable confidential source" that Plaintiff "had a controlled substances [sic] secreted in his
15 rectum." (Doc. 41, SAC, p. 5.) Amaro thereafter contacted receiving and releasing ("R&R") at
16 ASP who confirmed that Plaintiff had just arrived and was in a holding cell pending housing.
17 (*Id.*, at p. 6.) Amaro "instructed that Plaintiff be placed in restraints pending his arrival with the
18 other Defendants." (*Id.*) Amaro and the other Defendants checked Plaintiff's status to see who
19 he was and "determined that Plaintiff was a Mental Health Care -- Patient/Inmate and instead of
20 obtaining a warrant, they would medicate Plaintiff against his will to cause him to be
21 incapacitated so they could retrieve or remove . . . the controlled substance without any resistance
22 from Plaintiff" and restraints were placed on his hands, waist, and ankles to prevent him from
23 discarding the contraband. (*Id.*) Amaro, Kuckenbaker, and Kruse told Plaintiff they were
24 informed that he "had controlled substances in his rectal cavity [and] that if he did not agree to
25 voluntarily remove the substances they would take it by force. (*Id.*)

26       As he was being escorted outside R&R, Plaintiff began to complain that the handcuffs had
27 been placed too tightly and his hands were extremely painful and beginning to go numb. (*Id.*, at
28

pp. 6, 7.) Suddenly and without any warning, Amaro, Kuckenbaker, and Kruse took Plaintiff to the ground. (*Id.*, at p. 7.) In an effort to gain attention to stop the assault, Plaintiff began yelling obscenities and demanding to see a psychiatrist. (*Id.*) Hill, Morgan, and Villalba arrived and applied force to Plaintiff as well. (*Id.*.) Thereafter, Plaintiff was restrained on a gurney. (*Id.*) Dr. McLoughlin arrived and attempted to get Plaintiff to voluntarily remove the controlled substance from his rectal cavity, but when Plaintiff refused to cooperate, indicated to Plaintiff that he was going to obtain authorization to administer a sedative. (*Id.*) Dr. Narayan gave Dr. McLoughlin authorization to administer a sedative. (*Id.*) Nurse Starr gave Plaintiff two injections -- 50 mg of Diphenhydramine and 5 mg of Haloperidol Lactate Ampul. (*Id.*) Thereafter, Plaintiff alleges that Kruse positioned himself by Plaintiff's left shoulder, Amaro positioned himself by Plaintiff's head, Kuckenbaker positioned himself on the right side of Plaintiff. Then, Gibson removed the controlled substance from his rectum. (*Id.*, at p. 8.) Plaintiff alleges this violated his rights under the 4th, 5th, 8th, and 14th Amendments to the United States Constitution. (*Id.*)

Plaintiff alleges that afterward, Gibson prepared a false report indicating that he discovered a bundle of suspected narcotics in Plaintiff's belly button and Amaro and Kruse stated that they witnessed it. (*Id.*) Plaintiff alleges that his belly button is "a normal belly button" and that it is not possible to place anything in it. (*Id.*, at p. 9.) Amaro falsely stated that Plaintiff stated he had removed the bindle of controlled substance from his rectal cavity himself. (*Id.*) Plaintiff also alleges that Defendants had him sign some papers shortly after he was injected with medication. (*Id.*) Plaintiff does not identify/delineate which of his specific constitutional rights he feels were violated, so the Court notes the standards that appear to be most applicable to his factual allegations.

**A.  Linkage Requirement**

As stated in the prior screening orders and in the Findings and Recommendations on Defendants' motion to dismiss, the Civil Rights Act under which this action was filed provides:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of

3

> any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. The Court informed Plaintiff previously that the statute requires that there be factual allegations establishing an actual connection or link between the actions of the defendants and the deprivation Plaintiff alleges he suffered. *See Monell v. Department of Social Services*, 436 U.S. 658 (1978); *Rizzo v. Goode*, 423 U.S. 362 (1976). The Ninth Circuit has held that "[a] person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978). In order to state a claim for relief under section 1983, Plaintiff must link each named defendant with some affirmative act or omission that demonstrates a violation of Plaintiff's federal rights.

Despite the Court informing Plaintiff of this obligation, Plaintiff named, but failed to link Henson, Dr. Stockwell, and Dr. Lakshimi to any of his factual allegations. *See Austin v. Terhune*, 367 F.3d 1167, 1171 (9th Cir. 2004). Thus, Defendants Henson, Dr. Stockwell, and Dr. Lakshimi should be **DISMISSED** with prejudice.

  **B.**  **Plaintiff's Claims**

    **1.**  **Fourth Amendment -- Body Cavity Searches**

The Fourth Amendment prohibits unreasonable searches. *Bell v. Wolfish*, 441 U.S. 520, 558 (1979). In the Ninth Circuit,

> [A] digital bodily cavity search of a prison inmate complies with the Fourth Amendment if three conditions are met. First, prison officials must have reasonable cause to search the inmate.[2] *Vaughan v. Ricketts*, 950 F.2d 1464, 1468-69 (9th Cir.1991) (*Vaughan II*). Second, the search must serve a valid penological need. *Tribble v. Gardner*, 860 F.2d 321, 325 (9th Cir.1988). Third, the search must be conducted in a reasonable manner. *Vaughan v. Ricketts*, 859 F.2d 736, 741 (9th Cir.1988) (*Vaughan I*).

*Wiley v. Serrano*, 37 F. App'x 252, 253 (9th Cir. 2002).

As to the first and second conditions, Plaintiff admits that he had controlled substances on

---

[2] Thus, the Court rejects Plaintiff's contention that a search warrant was required before the search or seizure could occur.

1 his person and admits the officers received reliable information that this was the case. Without
2 doubt the need to eradicate narcotics in prison is a legitimate penological interes.  Thus, the first
3 two conditions are met.  However, the third factor is more difficult.  Whether a person acts
4 reasonably is generally a question for the trier of fact.

5       Courts have found that the reasonableness of a search depends on its circumstances and
6 requires a balancing of the need for the search against the extent of the invasion into the right to
7 personal bodily integrity. *Bell v. Wolfish*, 441 U.S. 520 (1979).  To clarify, whether a seizure was
8 conducted in a reasonable manner, the Court must consider a variety of factors "including
9 hygiene, medical training, emotional and physical trauma, and the availability of alternative
10 methods for conducting the search." *U.S. v. Fowlkes*, 804 F.3d 954, 963 citing *Vaughan v.*
11 *Ricketts*, 859 F.2d 736, 741 (9th Cir.1988), abrogated on other grounds by *Graham v. Connor*,
12 490 U.S. 386 (1989); *Thompson v. Souza*, 111 F.3d 694, 700-01 (9th Cir.1997) (considering
13 hygiene and medical training of officers in evaluating the reasonableness of the search). For
14 example, in *Fowlkes*, 804 F.3d at 964, the Court held,

> [T]he LBPD officers did not take adequate steps to minimize Fowlkes' physical trauma. They did not, for example, use lubrication or ensure that the removal was conducted under sanitary conditions; they did not seek the guidance or assistance of medical personnel; and they did not assure themselves that removing the object from Fowlkes' rectum was safe—indeed they did not know the size, shape, or substance of the object. Further, they did nothing to mitigate his anxiety or emotional trauma. They did not, for example, offer him options for removing the contraband or secure his compliance; they did not (and could not) assure him that the removal was safe or being conducted by a trained professional; and they did not (and could not) assure him that the procedure was legal and in keeping with LBPD policy rather than an arbitrary show of force.

22       Here, Plaintiff alleges that he was "placed in restraints, his ankles and waist were taped as
23 a precaution to prevent him from discarding the contraband." (Doc. 41 at 6)  Plaintiff admits he
24 was given the option of removing the drugs himself.  *Id.*  Rather, when Plaintiff complained about
25 the tightness of the wrist restraints, Amaro, Kuckenbaker and Kruse, forced him onto the ground.
26 *Id*. While he resisted verbally, the allegations do not indicate Plaintiff physically resisted.  *Id.* at 7.
27 Nevertheless, Plaintiff was forced onto a gurney where he was further restrained. *Id*. Plaintiff

1  again, was asked to voluntarily remove the drugs on his own and was told by Dr. McLoughlin
2  that otherwise, he would be sedated to allow for the removal. *Id*. When Plaitniff did not agree,
3  Dr. Narayan authorized the sedatives, at Dr. McLoughlin's request, and Starr administered them.
4  *Id*. Despite the presence of medical personnel, the guards surrounded the gurney and held him
5  down while one office, Gibson rather than a doctor or nurse, used his fingers to remove the drugs
6  from Plaintiff's rectum. *Id*. at 8.

7  When compared against the actions found to be unreasonable in *Fowlkes*, 804 F.3d at 964,
8  it appears that at this stage, Plaintiff's allegations are sufficient to give rise to an inference that the
9  defendants Amaro, Kuckenbaker, Kruse, Hill, Morgan, Villalba, Gibson, Dr. McLoughlin, and
10 Dr. Narayan acted unreasonably in how the seizure was carried out. However, Plaintiff's
11 allegations against Nurse Starr do not amount to a cognizable claim because Starr gave him the
12 injections at the direction of the physicians. Plaintiff states no allegations to show that Nurse
13 Starr had the authorization to disobey or overrule a physician's orders and a defendant's liability
14 is limited to the scope of their authorized job duties. *See Leer v. Murphy*, 844 F.2d 628, 633-34
15 (9th Cir. 1988)

16              **2.     5th Amendment**

17 The Fifth Amendment's due process clause only applies to the federal government.
18 *Bingue v. Prunchak*, 512 F.3d 1169, 1174 (9th Cir. 2008), *ref. Betts v. Brady*, 316 U.S. 455, 462
19 (1942) ("Due process of law is secured against invasion by the federal Government by the Fifth
20 Amendment and is safe-guarded against state action in identical words by the Fourteenth."),
21 *overruled on other grounds by Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799
22 (1963); *Castillo v. McFadden*, 399 F.3d 993, 1002 n. 5 (9th Cir.2005) ("The Fifth Amendment
23 prohibits the federal government from depriving persons of due process, while the Fourteenth
24 Amendment explicitly prohibits deprivations without due process by the several States: 'nor shall
25 any State deprive any person of life, liberty, or property, without due process of law.' " (quoting
26 U.S. CONST. amend. XIV) (emphasis in original)).

27 Since Plaintiff is not proceeding against federal actors, he is unable to state a cognizable
28

1  claim for violation of his rights under the Fifth Amendment and these claims should be
2  **DISMISSED** with prejudice.

### 3.   8th Amendment – Excessive Force

The Eighth Amendment prohibits those who operate our prisons from using "excessive physical force against inmates." *Farmer v. Brennan*, 511 U.S. 825 (1994); *Hoptowit v. Ray*, 682 F.2d 1237, 1246, 1250 (9th Cir.1982) (prison officials have "a duty to take reasonable steps to protect inmates from physical abuse"); *see also Vaughan v. Ricketts*, 859 F.2d 736, 741 (9th Cir.1988), cert. denied, 490 U.S. 1012 (1989) ("prison administrators' indifference to brutal behavior by guards toward inmates [is] sufficient to state an Eighth Amendment claim"). As courts have succinctly observed, "[p]ersons are sent to prison as punishment, not *for* punishment." *Gordon v. Faber*, 800 F.Supp. 797, 800 (N.D.Iowa 1992) (citation omitted), *aff'd,* 973 F.2d 686 (8th Cir. 1992). "Being violently assaulted in prison is simply not 'part of the penalty that criminal offenders pay for their offenses against society.'" *Farmer*, 511 U.S. at 834, (quoting *Rhodes*, 452 U.S. at 347).

Although the Eighth Amendment protects against cruel and unusual punishment, this does not mean that federal courts can or should interfere whenever prisoners are inconvenienced or suffer *de minimis* injuries. *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992) (Eighth Amendment excludes from constitutional recognition *de minimis* uses of force). The malicious and sadistic use of force to cause harm always violates contemporary standards of decency, regardless of whether significant injury is evident. *Id.* at 9; *see also Oliver v. Keller*, 289 F.3d 623, 628 (9th Cir. 2002) (Eighth Amendment excessive force standard examines *de minimis* uses of force, not *de minimis* injuries)). However, not "every malevolent touch by a prison guard gives rise to a federal cause of action." *Id.* at 9. "The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" *Id.* at 9-10 (internal quotations marks and citations omitted).

The Court is not in a position at the pleading stage to determine whether acquisition of the

contraband substances provide penological justification for the allegedly offending acts. *Barrett v. Belleque*, 544 F.3d 1060 (9th Cir. 2008). Plaintiff claims Amaro, Kuckenbaker, and Kruse suddenly and without cause forced Plaintiff to the ground while he was in handcuffs and restraints. He claims further that, though he was yelling obscenities, Hill, Morgan, and Villalba applied further force which resulted in Plaintiff being restrained on a gurney. Finally, he claims Gibson removed the contraband from Plaintiff's rectal cavity. These facts to state a cognizable excessive force claim under the Eighth Amendment against these defednants.

### 4. 14th Amendment -- Due Process

#### a. Procedural Due Process

The Due Process Clause of the Fourteenth Amendment protects prisoners from being deprived of life, liberty, or property without due process of law. *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). "[T]he Due Process clause permits the State to treat a prison inmate who has a serious mental illness, with antipsychotic drugs against his will, if the inmate is dangerous to himself or others and the treatment is in the inmate's medical interest" as long as the decision to medicate against his will is neither arbitrary, nor erroneous, and comports with procedural due process. *Washington v. Harper* 494 U.S. 210, 227-29 (1990).

As stated in the Findings and Recommendations on Defendants' motion to dismiss, Plaintiff's allegations can be read to imply that he posed a security threat and that the medications were necessary to calm him, they can also be read to infer that he was unnecessarily injected with sedatives while he was already restrained and he did not pose a threat. In the pleading stage, the Court is required to broadly construe Plaintiff's factual allegations and to afford them the benefit of any doubt. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010). Further, though the second amended complaint does not contain a perfectly drafted set of allegations, it can be construed to show that Plaintiff was allegedly unnecessarily medicated against his will at the hands of Amaro, Kuckenbaker, Kruse, Hill, Morgan, Villalba, Gibson, Dr. McLoughlin, and Dr. Narayan -- which, as alleged, is not implausible and survives screening just as it survived Defendants' motion to dismiss. *Starr*, 652 F.3d at 1216-17.

### b. Substantive Due Process

"To establish a violation of substantive due process . . . , a plaintiff is ordinarily required to prove that a challenged government action was clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare. Where a particular amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing a plaintiff's claims." *Patel v. Penman*, 103 F.3d 868, 874 (9th Cir. 1996) (citations, internal quotations, and brackets omitted), *cert. denied*, 520 U.S. 1240 (1997); *County of Sacramento v. Lewis*, 523 U.S. 833, 842 (1998). Plaintiff has not alleged any facts that would support a claim that his rights under the substantive component of the Due Process Clause were violated.

### 5. Declaratory Relief

In addition to money damages, Plaintiff seeks declaratory relief. "'A case or controversy exists justifying declaratory relief only when the challenged government activity is not contingent, has not evaporated or disappeared, and, by its continuing and brooding presence, casts what may well be a substantial adverse effect on the interests of the petitioning parties.'" *Feldman v. Bomar*, 518 F.3d 637, 642 (9th Cir. 2008) (quoting *Headwaters, Inc. v. Bureau of Land Management, Medford Dist.*, 893 F.2d 1012, 1015 (9th Cir. 1989) (internal quotations and citation omitted)). "Declaratory relief should be denied when it will neither serve a useful purpose in clarifying and settling the legal relations in issue nor terminate the proceedings and afford relief from the uncertainty and controversy faced by the parties." *U.S. v. State of Wash.*, 759 F.2d 1353, 1357 (9th Cir. 1985) (citations omitted).

The conduct at issue in this action occurred in 2013 at a facility where Plaintiff is no longer housed. Plaintiff's remedy, should he prevail, is monetary damages. Further, in the event that this action reaches trial and the jury returns a verdict in favor of Plaintiff, that verdict will be a finding that Plaintiff's constitutional rights were violated. Thus, Plaintiff's request for declaratory relief should be **DISMISSED**.

### III. CONCLUSION & RECOMMENDATIONS

Plaintiff's second amended complaint states the following cognizable claims upon which he should be allowed to proceed: for violation of his rights under the Fourth Amendment against Defendants Amaro, Kuckenbaker, Kruse, Hill, Morgan, Villalba, Gibson, Dr. McLoughlin, and Dr. Narayan based on the events surrounding the forced extraction of contraband from Plaintiff's rectal cavity; for excessive force in violation of the Eighth Amendment against Defendants Amaro, Kuckenbaker, Kruse, Hill, Morgan, Villalba, and Gibson; for involuntary sedation in violation of the Due Process Clause of the Fourteenth Amendment against Defendants Amaro, Kuckenbaker, Kruse, Hill, Morgan, Villalba, Gibson, Dr. McLoughlin, and Dr. Narayan.

Plaintiff fails to state a cognizable claim against Defendant Nurse Starr and fails to link Defendants Henson, Dr. Stockwell, and Dr. Lakshimi to any of his factual allegations to put them on notice of Plaintiff's claims against them such that they should all be dismissed. Based on the foregoing, the Court **RECOMMENDS**:

1. This action proceed on the following claims:
   a. for violation of his rights under the Fourth Amendment against Defendants Amaro, Kuckenbaker, Kruse, Hill, Morgan, Villalba, Gibson, Dr. McLoughlin, and Dr. Narayan based on the events surrounding the forced extraction of contraband from Plaintiff's rectal cavity;
   b. for excessive force in violation of the Eighth Amendment against Defendants Amaro, Kuckenbaker, Kruse, Hill, Morgan, Villalba, and Gibson; and
   c. for involuntary sedation in violation of the Due Process Clause of the Fourteenth Amendment against Defendants Amaro, Kuckenbaker, Kruse, Hill, Morgan, Villalba, Gibson, Dr. McLoughlin, and Dr. Narayan; and
2. All other claims and Defendants should be DISMISSED with prejudice from this action based on Plaintiff's failure to state cognizable claims under section 1983.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within **30**

**days** after being served with these Findings and Recommendations, Plaintiff may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Plaintiff is advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. Nov. 18, 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **March 11, 2016**                              **/s/ Jennifer L. Thurston**
UNITED STATES MAGISTRATE JUDGE